## No. 18,018.

### THE SHERWOOD IRRIGATION COMPANY v. JAMES F. VANDEWARK, ET AL.
(331 P. [2d] 810)

Decided November 17, 1958.

Mr. RONALD H. STRAHLE, for plaintiff in error.

Mr. ALBERT P. FISCHER, Mr. WARD H. FISCHER, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

DEFENDANTS in error Vandewark, as plaintiffs below, brought this action to enjoin plaintiff in error, defendant below, from interfering with their right to the use and transportation of waste and seepage waters originating in the Laidlaw Drain Ditch which they claim to own. We refer to the parties as they appeared in the trial court.

The facts as gleaned from the record are briefly as follows: In 1908 one Walter Laidlaw was the owner of a farm near that now owned and occupied by plaintiffs. A part of the Laidlaw land was so situated that drainage was necessary and in that year a system of drains and ditches was constructed which discharges the waste and seepage waters from the Laidlaw farm into defendant's ditch. Upon completion of this drain system Laidlaw conveyed the waters accumulated thereby, by warranty deed, to William A. Drake, the then owner and a predecessor in title of plaintiffs. Since that initial conveyance

of the Laidlaw Drain water, all subsequent deeds transfering title to plaintiffs' farm have specifically included the rights to the water of the Laidlaw Drain Ditch. It appears also that in the years between 1908 and 1954 the plaintiffs and their predecessors in title have used this Laidlaw water for the irrigation of their lands, transporting the same from the point where the drain discharges into defendant's ditch, to the point where this and other waters are taken from the ditch for use on plaintiffs' land. 1954 being a year of short supply, the defendant refused to permit this water to be turned on to plaintiffs' land, claiming it to be the property of defendant to be allocated among its stockholders. This action resulted.

Defendant contended in the trial court that the plaintiffs were without right or ownership in the Laidlaw Drain waters, and that even if they were they were without right to enforce the carriage of such water through defendant's ditch to plaintiffs' headgate. Upon trial the court resolved the issues in favor of the plaintiffs and entered a decree confirming plaintiffs' right and title to the Laidlaw Drain water and enjoined defendant, its officers, agents and stockholders from interfering with the plaintiffs in the use and enjoyment of such waters and the use of the Sherwood Ditch as a carrier therefor. Motion for a new trial was at first dispensed with, then leave to file same granted and the motion for new trial denied. The defendant is here on error seeking reversal.

Seven points are urged by defendant upon which it is claimed the trial court committed error. Summarized they amount to two main contentions:

1. That plaintiffs failed to establish title to the Laidlaw Drain waters.

2. That the court erred in holding that plaintiffs established a right to enforce carriage of such water through defendant's ditch by prescription.

We treat them in that order.

■ ■ That water is a valuable property right, sub-

ject to sale and conveyance, is recognized in Colorado. *Farmers Highline Canal v. Golden* (1954), 129 Colo. 575, 272 P. (2d) 629. The deed from Laidlaw to Drake, executed in 1908, conveys "All seepage, waste and drainage created by or flowing in or through that certain Drain Ditch named the Laidlaw Drain Ditch * * *." This specific reference or description is carried through all subsequent conveyances of the land now owned by plaintiffs. If the clear ond unequivocal language found in these several conveyances from the original Laidlaw deed through the chain of title to plaintiffs be deemed inadequate to transfer this water right, then the labors of scriveners and conveyancers through the centuries have been in vain, for we know of no more appropriate terms that could be used to accomplish the purpose. Several witnesses testified to knowledge of plaintiffs' title and the use of such water by plaintiffs and their predecessors in title over a period of many years. The findings of the trial court that plaintiffs are the owners and entitled to the use of the Laidlaw Drain waters is amply supported by the record. A contrary finding could only be based upon the premise that such water is not subject to transfer and conveyance. No error was committed by the trial court with respect to this finding.

The assertion by defendant that this action is an attempt to establish a doubtful right to the water in question and to determine the title thereto, is erroneous. It is true, as urged, that generally an action for injunctive relief will not lie to determine title (*Barrios v. Pleasant Valley and Lake Canal Co.* (1932), 91 Colo. 563, 565, 17 P. (2d) 301; *French v. Mitchell* (1933), 92 Colo. 532, 22 P. (2d) 644; *Ronce v. Favre* (1940), 106 Colo. 221, 103 P. (2d) 26), but this is not such a case. Here the right and title to the water involved is not in doubt. There is no evidence challenging plaintiffs' ownership other than a denial in the answer and a profession of ignorance of such ownership by officers of the defendant corporation. This is insufficient to bring this case within

the rule. Further, we point out that this type of action where only the right to injunctive relief against defendant is sought, is not a proceeding to vest a decreed water right in plaintiffs in compliance with the statutes. That matter has not been determined here.

Defendant complains of the finding of the trial court that since 1908 the plaintiffs and their predecessors in title have openly, notoriously and adversely used the defendant's ditch as a carrier for the Laidlaw water, and have acquired an easement thereby for the carrying of such water through said ditch. It is contended that the evidence does not support this finding; that the officers of the defendant were ignorant of any claim by the plaintiffs to ownership of the Laidlaw Drain water and that it was delivered to and used by the plaintiffs only as "extra" water when not needed elsewhere by other stockholders.

■ The evidence establishes that defendant's superintendents, whose duty it was to administer and supervise the delivery of water to the users of its ditch, knew of plaintiffs' claim to the Laidlaw water, and as ditch riders delivered it to plaintiffs' farm. It also appears from the record that such water was regularly delivered to plaintiffs' headgate without objection or controversy from 1925 until refused in 1954. Notwithstanding the claimed lack of knowledge of the officers of defendant, it clearly appears that Laidlaw Drain water was discharged into defendant's ditch, carried therein to plaintiffs' headgate, and so far as defendant's ditch administrators were able to do so, was delivered to plaintiffs.

■ As pointed out above, the plaintiffs claimed and the court decreed, that they had established a prescriptive right by adverse possession to the continued service of the defendant in carrying the water claimed from the Laidlaw Drain to their headgate. This poses the question of whether an easement by prescription to a *service,* as distinguished from a right over or upon land or the right to or use of water, can be established by adverse user.

Since we are persuaded that plaintiffs' right to the service of carriage of the Laidlaw Drain water through defendant's ditch is firmly established on other grounds, it is not necessary to resolve that question here.

■ It is admitted in the pleadings and in the evidence that the defendant is a mutual ditch company, organized under the applicable statutes of this state; that its principal purpose is to render a service to its stockholders in the carriage of waters owned by them through its ditch from the source of supply to their respective headgates. For this service, and to defray the expenses of maintenance and upkeep, assessments are levied upon the stockholders. The plaintiffs are stockholders of the company and as such are entitled to the services available in making delivery of water owned by them to their premises on the same basis as other stockholders. It is admitted that the defendant ditch company owns little or no water of its own, as stated in its brief, "Most of the water delivered through the company's ditch does not belong to the company; principally the ditch acts as a carrier for waters which accrue to the stockholders as a result of their concurrent stockholding in The Arthur Irrigation Company * * *." It was shown at the trial that water from other sources of supply is also carried in this ditch. The relationship of the parties here is such that the plaintiffs are entitled to demand and the defendant is under an obligation to supply the services for which it was organized and exists upon a fair and reasonable basis.

■ The decree as entered imposes upon defendant the responsibility of delivering to plaintiffs the Laidlaw Drain waters, the flow of which, according to the testimony, is variable and uncertain. Until after the entry of the decree below no adequate measuring device had been installed to determine with any degree of accuracy the amount of water entering defendant's ditch from the Laidlaw Drain or the amount deliverable to the plaintiffs' headgate. Whether the devices which have

been installed are suitable and adequate, and who should pay for them, is a matter which should be determined by the trial court, since the defendant cannot be charged with responsibility for this water until it enters its ditch.

Insofar as the judgment and decree restrain and enjoin the defendant from interfering with plaintiffs' rights in and to the use of the Laidlaw Drain waters it is affirmed; as to the other issues presented the action is remanded to the trial court with directions to modify its decree in accordance with the views herein expressed.

MR. JUSTICE HALL not participating.