No. 23819.

THE UNITED STATES OF AMERICA *v.* THE DISTRICT COURT IN AND FOR THE COUNTY OF EAGLE AND STATE OF COLORADO AND THE JUDGE THEREOF, THE HONORABLE HAROLD A. GRANT, THE COLORADO RIVER WATER CONSERVATION DISTRICT, CITY AND COUNTY OF DENVER, ACTING BY AND THROUGH ITS BOARD OF WATER COMMISSIONERS, CENTRAL COLORADO WATER CONSERVANCY DISTRICT, AND THE NEW JERSEY ZINC COMPANY.

(458 P.2d 760)

Decided September 15, 1969.

556

558

CLYDE O. MARTZ, Assistant Attorney General, SHIRO KASHIWA, Assistant Attorney General, LAWRENCE M. HENRY, United States Attorney, JAMES L. TREECE, United States Attorney, WARWICK DOWNING, II, Assistant United States Attorney, ROGER P. MARQUIS, Attorney, Department of Justice, JAMES W. MOORMAN, Attorney, Depart-

ment of Justice, DAVID OSBORNE, Attorney, Department of Justice, for petitioner.

DELANEY and BALCOMB, KENNETH BALCOMB, for respondent, District Court and Judge thereof, and the Intervenor, The Colorado River Water Conservation District.

GEORGE L. ZOELLNER, GLENN G. SAUNDERS, for intervenor, City and County of Denver, acting by and through its Board of Water Commissioners.

MILLER and RUYLE, DAVID J. MILLER, ROBERT A. RUYLE, ALVIN L. STEINMARK, for intervenor, Central Colorado Water Conservancy District.

DAWSON NAGEL, SHERMAN & HOWARD, DON H. SHERWOOD, RAPHAEL J. MOSES, for intervenor, New Jersey Zinc Company.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THIS is an original proceeding in this court wherein the United States has asked for a writ prohibiting the district court from asserting jurisdiction over it in a supplemental water adjudication under C.R.S. 1963, 148-9-7. We issued a rule to show cause why the relief requested should not be granted.

The proceeding is in Water District 37 of the State of Colorado, which embraces the Eagle River and its tributaries. The Eagle River is a tributary of the Colorado River and is non-navigable. There have been a number of previous adjudications in this water district. The decree in the original adjudication was entered eighty years ago and the last one was entered on February 21, 1966. The United States was not a party in any of these earlier proceedings.

The current proceedings were commenced by the Colorado River Water Conservancy District and it sought to make the United States a party under 43 U.S.C. § 666 (known as the McCarran Amendment) which reads in part as follows:

"(a) *Joinder of United States as Defendant; Costs.* Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

"(b) *Service of Summons.* Summons or other process in any such suit shall be served upon the Attorney General or his designated representative."

 The United States moved the district court for dismissal as to it by reason of lack of jurisdiction. This motion was denied by the Honorable William H. Luby, the judge of the court, who has since retired. We have concluded that the district court has jurisdiction over the United States in these proceedings and that the motion was properly denied.

The propositions asserted by the United States are based upon the solid foundation that: (1) the United States cannot be subjected to the jurisdiction of any

court without the consent of Congress; and (2) the only statute adopted by the Congress consenting that the United States may be made a party to a water adjudication is the McCarran Amendment. *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; *United States v. Clarke*, 33 U.S. (8 Pet.) 436, 8 L.Ed. 1001. The Government's propositions are as follows:

(1) The McCarren Amendment can be used only with respect to a general adjudication of a river system in which all rights of all users are before the court; and the present proceeding does not involve (a) a general adjudication, (b) an entire river system, nor (c) all water users in the district.

(2) The United States has unadjudicated rights antedating the last adjudicative decree and the district court cannot give priorities to these rights prior to the date of the last adjudication.

(3) The district court has jurisdiction only to adjudicate rights arising out of Colorado law and the United States claims rights arising otherwise.

The following are considered as the "appropriation" states with respect to water adjudications: Alaska, Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, Utah, Washington and Wyoming. With the exception of Colorado all of the appropriation states have a state-wide system of adjudicating priorities or issuing permits for the use of water. Until 1969 Colorado throughout its history has been divided into water districts and adjudicated priorities have been determined within each district. In 1969 the General Assembly of Colorado adopted Senate Bill 81 amending C.R.S. 1963, 148-21-1 *et seq.* which consolidates the 70 water districts of the state into seven divisions, each of which embraces an entire river drainage

area within the state. The water adjudication here involved was commenced prior to the adoption of this amendment. There may be some question (which we do not decide) as to whether any further proceedings in the district court will be under the statutes existing before or after this amendment. However, we regard this as immaterial to the jurisdictional question presented. Except as expressly stated otherwise, our comments with respect to Colorado water laws will be with respect to those in existence prior to the 1969 amendment.

 As the Government points out, priorities to the use of water are established by decrees of our district courts in the several water districts. Under our statutes there can be an original adjudication culminating in a decree fixing these priorities. Thereafter there can be a supplemental adjudication to establish priorities to the use of water not decreed in the original proceedings. There is no limit to the number of successive supplementary proceedings that may be had. The earliest priority granted in any supplemental adjudication must be later than the last priority established by the next preceding adjudication. *Hardesty Co. v. Arkansas Valley Co.*, 85 Colo. 555, 277 P. 763. Those appropriating water within the water district involved who were not served personally or by mail with notice of the proceedings are barred from attacking a decree after the lapse of two years. Those outside the water district may bring an action to adjust priority rights as between different districts within four years from the time of rendition of a decree having an effect thereon. C.R.S. 1963, 148-9-16 and 17. In practically all of the districts in Colorado, prior to the adoption of the McCarran Amendment in 1952, there had been not only original adjudications but supplementary adjudications.

I.

## CONGRESSIONAL INTENT

 We address ourselves first to the question as to whether it was the intent of Congress that the "adjudi-

cation of rights" set forth in the McCarran Amendment includes water adjudications in Colorado. As a preface to this consideration it should be mentioned at the outset — as is later a subject of this opinion — that the United States can obtain in a supplementary water adjudication in Colorado an adequate judicial determination of its rights to the use of water and of the relative priorities of those rights to other water rights.

█ Water in any area is a vital commodity. A great part of the agricultural lands in the appropriation states can be productive only with the use of water for irrigation. Each state has control of the use and priority of use of water, not only for irrigation, but for domestic, municipal and industrial purposes.

█ The trend of Congressional legislation has been to require the United States to be in the position of any other claimant to water rights. The Desert Land Act of 1877 made all non-appropriated waters from non-navigable sources upon the public lands "free for the appropriation and use of the public for irrigation, mining and manufacturing purposes." 43 U.S.C. § 321. "The fair construction of the provision now under review is that Congress intended to establish the rule that for the future the land should be patented separately; and that all non-navigable waters thereon should be reserved for the use of the public under the laws of the states and territories named. ... If it be conceded that in the absence of federal legislation the state would be powerless to affect the riparian rights of the United States or its grantees, still, the authority of Congress to vest such power in the state, and that it has done so by the legislation to which we have referred, cannot be doubted." *California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356.

A part of the Reclamation Act in effect since 1902 reads: "Vested rights and State laws unaffected: Nothing [in this chapter] shall be construed as affecting or intended

to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions [of this chapter], shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or any landowner, appropriator, or user of water in, to or from any interstate stream or the waters thereof." 43 U.S.C. § 383.

The McCarran Amendment was adopted during the second session of the 82nd Congress in 1952. Its language was taken from S. 18, which was introduced in the first session of that Congress in 1951. On April 25, 1951 a member of the Denver Bar testified at a committee hearing as to the nature of water adjudications in Colorado (pages 27 and 28 of Hearings Before A Sub-committee Of The Committee On The Judiciary, United States Senate Eighty-Second Congress, First Session, On S. 18, A Bill To Authorize Suits Against The United States To Adjudicate And Administer Water Rights). He explained how water rights of the City of Denver have been adjudicated in at least seven districts. This brought clearly to the committee's attention the characteristics of the Colorado system as distinct from those of other states.

The report of the Senate Judiciary Committee, prepared as a result of these hearings, after quoting from *Ickes v. Fox,* 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525, stated:

"It is therefore settled that in the arid Western States the law of appropriation is the law governing the right to acquire, use, administer and protect the public waters as provided in each such State.

"It is most clear that where water rights have been adjudicated by a court and its final decree entered, or where such rights are in the course of adjudication by a court, the court adjudicating or having adjudicated such

rights is the court possessing the jurisdiction to enter its orders and decrees with respect thereto and thereafter to enforce the same by appropriate proceedings. In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficent disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts. Unless Congress has removed such immunity by statutory enactment, the bar of immunity from suit still remains and any judgment or decree of the State court is ineffective as to the water right held by the United States. Congress has not removed the bar of immunity even in its own courts in suits wherein water rights acquired under State law are drawn in question. The bill (S. 18) was introduced for the very purpose of correcting this situation and the evils growing out of such immunity." Senate Calendar No. 711, Report No. 755, September 17, 1951.

H. R. 7289 was a House appropriation bill in the second session of the 82nd Congress. After original action by the House of Representatives, the United States Senate added to it the McCarran Amendment. The bill as so amended came before the House in July 1952. Congressman Rooney of New York moved to strike the amendment and read a communication addressed to him by

the Quartermaster General of the United States Marine Corps, a portion of which stated:

"The effect of such legislation to give a blanket waiver by the United States of its immunity from suit in actions of this kind, opens the way for piecemeal adjudications of water rights in the various State courts, with the United States compelled to defend itself in a multiplicity of actions." Congressional Record — House — July 4, 1952, p. 9445.

Following Mr. Rooney's remarks his motion to strike the amendment lost with all four of Colorado's Congressmen voting "Nay."

Many river systems originate around the Continental Divide in Colorado, collect a substantial part of their flow in Colorado, provide water for the irrigation of Colorado lands and Colorado's domestic, municipal and industrial uses — as adjudicated by our district courts — and flow into Colorado's seven neighboring states. Some of these rivers are the South Platte, Arkansas, Rio Grande, San Juan, Colorado, White and Yampa, flowing from Colorado to Wyoming, Nebraska, Kansas, Oklahoma, New Mexico, Arizona and Utah.

Our situation with respect to water rights has been that priorities are decreed under state laws, but any water rights of the United States in Colorado remain mysterious, largely unknown, uncatalogued and unrelated to decreed water rights. This creates an undesirable, impractical and chaotic situation. It was to remedy this situation and similar ones in other states that caused Congress to adopt the McCarran Amendment.

The foregoing is only a portion of the history and record which leads us to the conclusion that Congress intended to include the water adjudicative procedure of Colorado among the suits in which sovereign immunity of the United States would be waived. See *In re Greenriver Drainage Area*, 147 F. Supp. 127 and Vol. 1 of the Study of Development, Management and Use of Water

Resources on the Public Lands Prepared for the Public Land Law Review Commission, pp. 189-195.

## II.

### A GENERAL ADJUDICATION

 The Government argues that the McCarran Amendment relates only to a "general adjudication" and that a supplementary adjudication is not a "general adjudication." The term "general adjudication" is not used in the statute — rather there we find "adjudication of rights." However, the attorneys for the United States point to the use of the term "general adjudication" in *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15. More thorough treatment of the facts and question presented is contained in the decision of the United States Court of Appeals reviewed in *Dugan, sub nom State v. Rank*, 293 F.2d 340. This was an action brought by some, but not all, of the users of water of the San Joaquin River in California to enjoin the United States and officials of the Bureau of Reclamation from storing and diverting water of that river. In *Dugan* Mr. Justice Clark stated, "Rather than a case involving a *general* adjudication * * *, it is a private suit to determine water rights solely between respondent and the United States and the local Reclamation Bureau officials." *State v. Rank, supra,* was affirmed. In it the Court of Appeals had stated: "The question presented by the contention of the United States requires us to determine whether this suit can be regarded as one 'for the adjudication of rights to the use of water of a river system' within the meaning of § 666. "(2) There can be little doubt as to the type of suit Congress had in mind. It was not a private dispute between certain water users as to their conflicting rights to the use of waters of a stream system; rather, it was the quasi-public proceeding which in the law of western waters is known as a 'general adjudication' of a stream system: one in which the rights of all claimants on a stream system, as between themselves, are ascertained and officially stated."

Supplementary water adjudications in Colorado throughout the history of the state have been referred to as "general adjudications." The use of the term in *Dugan,* particularly considering the above quoted language of *State v. Rank, supra,* does not bolster the Government's contention. In fairness, it should be stated that counsel for the United States have combined with the term "general adjudication" additional clauses to the effect "of an entire river system in which all water users are joined." We proceed to the subject of "entire river system" immediately. Later in this opinion, in connection with our discussion of the adequacy of relief to the United States under Colorado law, we will address ourselves to the matter of other parties necessary to the proceeding.

### III.

#### RIVER SYSTEM

The Government has stressed repeatedly that an "entire river system" must be involved in order for the McCarran Amendment to be invoked. It urges that District 37 does not embrace an "entire river system." The McCarran Amendment does not contain the word "entire," but rather reads, "adjudication of rights to the use of water of a river system."

An *entire* river system well could mean all of a river and its tributaries above the place of discharge into the ocean. In the case of the Colorado River it would involve water flowing and appropriated in the states of Colorado, Utah, New Mexico, Wyoming, Arizona, Nevada and California. A court of one state cannot adjudicate the rights of ditches diverting water in another state. *Irrigation Co. v. Garvey,* 117 Colo. 109, 184 P.2d 476. Such an interpretation as urged by the Government would confine the operation of the McCarran Amendment solely to those rivers arising and remaining entirely within the boundaries of one state. Obviously this was and is not the purpose, intent and effect of the Amendment.

It may be that here the United States wished to infer that the McCarran Amendment relates to proceedings in the other western states which have state-wide adjudications, but not to Colorado because of its segmentary water districts. The Little Snake River is in northwestern Colorado. It crosses into Wyoming and after a few miles returns to Colorado, emptying eventually (still in Colorado) into the Yampa River. Under the proposition just mentioned, Wyoming could bring the United States into adjudication of waters appropriated from the small portion of the Little Snake in that state; but Colorado could not do the same as to the much greater portion of the stream within its boundaries.

It is obvious that a state-wide adjudication can be just as fragmentary as that of a water district. At most, the differences are matters of degree. Therefore, we conclude that a proceeding under C.R.S. 1963, 148-9-7 in Water District 37 — or any other water district — constitutes an adjudication of rights to the use of water of a *river system* contemplated by the McCarran Amendment. The testimony of the Denver attorney mentioned earlier supports Congressional intent in this respect.

With respect to the Government's argument that the same river may flow through more than one water district, attention is directed to *Ft. Lyon Canal Co. v. Arkansas Valley S. B. & I. L. Co.*, 39 Colo. 332, 90 P. 1023. It was there said:

"Ample provision is made for the protection of the rights of parties to proceedings in the same district, but none of the provisions relating to this class relate to appropriators in different districts, as between each other. As to these, it was necessary for the orderly distribution of water, that the decrees in the different districts should be *prima facie* binding, but in order to protect their rights, as between each other, a period was given within which actions might be instituted to settle and adjust such rights. For this purpose, §§ 2434 and 2435 [Mills' Ann. Stats.] were enacted. Thereby opportunity was afforded

to adjust such rights by an independent action, but, wisely, the period within which such an action could be commenced was prescribed; otherwise, rights as between appropriators of water in different districts where rights have been adjudicated, under the statutory proceedings, would remain unsettled indefinitely."

The provisions of §§ 2434 and 2435 as mentioned are the same as C.R.S. 1963, 148-9-17. With this correlation between districts under our statutes and with the creation of a division for each river by the 1969 amendment (C.R.S. 1963, 148-21-1 *et seq.*), the same practical result can be obtained in adjudication of rights under Colorado statutes as under the state-wide systems of other states.

IV.

*APPROACH TO THE ADJUDICATION OF WATER RIGHTS OF THE UNITED STATES*

The remainder of the propositions asserted by the Government (as outlined early in this opinion) might be characterized as follows: If the state court in Colorado has jurisdiction over the United States, how and why can it grant the relief the United States would desire with respect to its water rights? In oral argument counsel for the Government indicated if there were a satisfactory answer to that question, the United States might not be so loathe to submit itself to the jurisdiction of our state courts. He also gave the distinct impression that he would be most surprised if we produced a ruling which would overcome the trepidation of the Justice Department to see federal water rights under the state jurisdiction. Whether or not we mitigate the sovereign reluctance, we hold that under its plenary power a Colorado district court can make the relative rights of the United States a subject of its decree and can bring under its jurisdiction additional necessary parties in order to make such a decree fully valid, effective and enforceable. Before elaborating on this declaration, we deem it advisable to discuss some of the features and problems involved — or perhaps to be involved — in any

decretory approach to the water rights of the United States in Colorado, which must be confronted someday whether in our state courts or in a federal forum.

In the district court the United States filed a memorandum supporting its motion to dismiss. It there made the following statement concerning its claims to the use of water:

"The United States claims water rights in Water District 37 which have never been the subject of an adjudication proceeding. These rights are under the administration of the Department of Agriculture. These rights claimed by the United States are rights with a date of reservation earlier than priorities granted in previous adjudications in Water District No. 37. To be specific:

"The United States will claim those rights to use the waters within Colorado Water District 37 (primarily the Eagle River and its tributaries) by reason of the withdrawal of public lands within Water District 37 and the reservation thereof as National Forest lands. Said withdrawal was made by Presidential Proclamation of August 25, 1905 (34 Stat. 3144), and the United States claims those waters that it may now or in the future require for the purpose of said withdrawal with a priority of August 25, 1905.

"In addition to our general reserved right, the United States will claim various specific uses, as follows:

"(a) 39 specific uses upon the above said withdrawn lands for which the United States had made filings with the State Engineer. The dates of these filings run from 5/18/1939 to 3/1/1965. The United States will, however, claim the date of reservation, 8/25/1905.

"(b) 185 specific uses upon the above said withdrawn lands for which the United States has made no filing with the State Engineer. Of the uses, 68 are current uses and 117 are forseeable uses. The United States will claim the date of reservation, 8/25/1905.

"(c) 10 C.F.S. for the Minturn Ranger Station Ditch, diverted from the Eagle River at a point on the right

bank of the river whence the northwest corner of the SW ¼ of Sec. 36, T. 5 S., R. 81 W., 6th P.M. bears S 87° 25'W, a distance of 1982 feet. The date of appropriation is September 16, 1941. The water is used for irrigation, watering, and fire protection.

"(d) 1 C.F.S. for Nelson Ditch diverted from the Eagle River at a point on the south bank of the river, whence the northwest corner of the SW ¼ of Sec. 36, T. 5 S., R. 81 W., 6th P.M. bears S 75° 31'W, a distance of 1337.1 feet. The date of appropriation is May 28, 1902. The water is used for irrigation and stock watering.

"(e) Additional specific uses may be claimed. For example, at the moment the Department of Agriculture is investigating the general reserved right and six specific uses on an area acquired from the Department of Defense and known as Camp Hale. The reservation and priority dates have not been determined at this time." In its application here, the United States makes the statement, "The court had no jurisdiction to adjudicate rights other than those arising under Colorado law, but the United States claims rights otherwise arising." We are not sure whether by this statement the United States asserts that none of its rights have arisen under Colorado law. For the purpose of our discussion we will assume that it claims both (a) water rights reserved in connection with the withdrawal of public lands and which it asserts have not arisen under Colorado law and (b) appropriations arising under Colorado law (such as possibly may be the case as to water diverted by the Nelson Ditch mentioned in its memorandum).

V.

## RESERVED RIGHTS

The Government insists that our district courts have jurisdiction only to adjudicate rights under the doctrine of appropriation and, therefore, they do not have jurisdiction over the so-called reserved water of the United States. It advises us that such reserved rights are valid

with priorities substantially antedating several of the supplementary decrees in Water District 37 under the authority of *Arizona v. California*, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542; *Federal Power Commission v. Oregon*, 349 U.S. 435, 75 S.Ct. 832, 99 L.Ed. 1215; *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340; *United States v. Rio Grande Dam & Irrig. Co.*, 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136.

In contrast, counsel for the intervenor Central Colorado Water Conservancy District contend that the United States has no rights whatsoever except any that it might have acquired in the same manner as an individual. In support of this they cite article XVI, §§ 5 and 6 of the Colorado constitution and *Stockman v. Leddy*, 55 Colo. 24, 129 P. 220. These sections were placed in the constitution at the time it was prepared under the enabling act of Congress. Section 5 and a portion of Section 6 read as follows:

"Section 5. Water of streams public property. — The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.

"Section 6. Diverting unappropriated water — priority preferred uses. — The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. * * *"

In *Stockman* this court stated:

"This constitution of ours was ratified and adopted by the legal voters of the state in accordance with the conditions prescribed by the enabling act of congress, and the president of the United States in his proclamation admitting Colorado into the Union found the fact to be that the fundamental conditions imposed by congress on the State of Colorado to entitle it to such admission had been complied with. Congress, in passing the enabling act, and the President, in issuing his proclamation,

were aware of the existing physical conditions and of the topography and geography of the state. The federal government, by its lawmaking and executive bodies, knew that the natural streams of this state are, in fact, nonnavigable within its territorial limits, and practically all of them have their sources within its own boundaries, and that no stream of any importance whose source is without those boundaries, flows into or through this state. The entire volume of these streams is therefore made up of rains and snows that fall upon the surface of lands included within the exterior lines of this state and of springs which issue from the earth within the same area. Such being the peculiar conditions, the state was justified in asserting its ownership of all the natural streams within its boundaries. When Colorado was admitted into the Union with such a constitution, the federal government, through its lawmaking and executive departments, thereby recognized and confirmed such right of ownership as belonging to the state in its sovereign capacity. We therefore find it to be not only that our state constitution and pertinent statutes, but the decisions of the courts and duly announced public policy, all are in accord on the proposition to which the federal government has, as we have just shown, given its consent that the waters of the natural streams of this state belong to the people, to the state, in its sovereign capacity, and that its right to their distribution and control within its borders is free from any interference by any other sovereignty."

The authorities cited by the United States are not directly in point so far as its rights in Colorado are concerned. *Arizona v. California, supra,* involves claims of the United States on behalf of Indian reservations and other withdrawn lands, most if not all of which were created or withdrawn prior to the time Arizona was admitted into the Union in 1912. Furthermore, Arizona has never had a provision in its constitution declaring pro-

prietorship of water as does the Colorado constitution. In *Arizona v. California* it was said:

"Arizona's contention that the Federal Government had no power, after Arizona became a State, to reserve waters for the use and benefit of federally reserved lands rests largely upon statements in *Pollard's Lessee v. Hagan,* 3 How. 212, 11 L.Ed. 565 (1845), and *Shively v. Bowlby,* 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331 (1894). Those cases and others that followed them gave rise to the doctrine that lands underlying navigable waters within territory acquired by the Government are held in trust for future States and that title to such lands is automatically vested in the States upon admission to the Union. But those cases involved only the shores of and lands beneath navigable waters. They do not determine the problem before us and cannot be accepted as limiting the broad powers of the United States to regulate navigable waters under the Commerce Clause and to regulate government lands under art. IV, § 3, of the Constitution. We have no doubt about the power of the United States under these clauses to reserve water rights for its reservations and its property."

Certainly this is not authority to refute the contention that, by reason of the provisions of Colorado's constitution as originally adopted, the United States surrendered its right in the future to reserve water.

In *Federal Power Commission v. Oregon, supra,* the Commission had issued to a power company a license to construct a hydro-electric plant, including a dam across a navigable stream. The dam was to be located in part upon an Indian reservation and the remainder upon lands long before withdrawn for power purposes. The project did not involve any permanent diversion of water as the entire flow of the river would run through or over the dam into the natural bed of the stream. It was held that the Federal Power Act was applicable to the license and a license from the state was not necessary. Again, this

case is not direct authority for the answer sought here in Colorado.

*Winters v. United States, supra,* involved water for an Indian reservation reserved prior to the admission of Montana into the Union. It was argued that the subsequent admission of Montana into the Union "upon an equal footing with the original States" (25 Stat. 676) repealed the reservation of water. This argument was not accepted. We are not concerned here with water rights asserted by the United States prior to Colorado's admission into the Union.

The *United States v. Rio Grande Dam & Irrig. Co., supra,* involved acts within the Territory of New Mexico prior to the time New Mexico became a state. It was there stated:

"Although this power of changing the common law rule as to streams within its dominion undoubtedly belongs to each State, yet two limitations must be recognized: First, that in the absence of specific authority from Congress a State cannot by its legislation destroy the right of the United States, as the owner of lands bordering on a stream, to the continued flow of its waters; so far at least as may be necessary for the beneficial uses of the government property. Second, that it is limited by the superior power of the General Government to secure the uninterrupted navigability of all navigable streams within the limits of the United States."

Here, instead, we are dealing with a non-navigable stream and instead of having an "absence of specific authority from Congress," the question is what was the specific authority from the United States in its recognition of the Colorado constitution.

"In sharp contrast, however, stand federal rights under the reservation doctrines, which are the subject of mystery, whose true nature can be unveiled only through the search of the few obscure instances wherein they have been adjudicated." The foregoing is from the study

submitted to Public Land Law Review Commission, *supra,* P. S-13.

We are not determining whether the United States has reserved water rights in connection with lands withdrawn subsequent to August 1, 1876, the date of Colorado's admission to the Union; nor, if so, whether these rights have priority over previously adjudicated rights. These questions properly should be decided after the United States presents its specific claims for adjudication and the issues of fact and law are clearly drawn. We do say at this time that, except for *Stockman v. Leddy, supra,* we have not encountered any decision determinative as to whether the United States has reserved water rights in Colorado; and we postpone the consideration of whether *Stockman* is to be overruled, as perhaps it must be if the contentions of the United States as to its reserved water rights are found to be sound.

VI.

## WATER APPROPRIATIONS OF THE UNITED STATES UNDER STATE LAW

As already mentioned, the United States has not been a party in any previous general adjudication in District 37. In its brief the Government cites Colorado statutes and our decisions under which decrees in water adjudications cannot be attacked after four years and in a subsequent water adjudication a priority cannot be given to a use of water prior to the date of the last adjudicated decree. It quotes from *Arizona v. California,* 298 U.S. 558, 56 S.Ct. 848, 80 L.Ed. 1331, that "no decree rendered in its absence can bind or affect the United States * * *." The brief continues:

"It is self-evident that supplemental water adjudications are not actions to which the United States has consented. It would be absurd to hold that the United States is bound by prior adjudications to which it was not a party and is thus now bound by proceedings in which it cannot have its rights adjudicated. Such a holding would convert 43 U.S.C. Sec. 666 into an instrument of injustice

578

that would destroy the rights of the United States. It is for this reason that 43 U.S.C. Sec. 666 consents only to an adjudication in which all the rights of all users are before the court."

The quoted language in *Arizona v. California* was not made in connection with an adjudication of water rights by a state court and here again we are going to wait until the matter is argued more fully and specifically before making a determination as to whether this applies to Colorado water adjudications. Offhand, we are inclined to believe that it does apply. In *Irrigation Co. v. Garvey*, 117 Colo. 109, 184 P.2d 476 there was involved water appropriated in Utah from Rock Creek, which arises in Utah, flows into Colorado, and then returns to Utah. The question was whether Utah users were bound by a Colorado adjudicative decree more than four years old. This court held that they were not and in this opinion Mr. Justice Stone wrote:

"However, the decree can speak only as to matters within the jurisdiction of the court, and where the court in such a statutory proceeding attempts to determine matters beyond its competence, its decree, as to such matters, is not conclusive. 'If the court lacks jurisdiction to render, or exceeds its jurisdiction in rendering, the particular judgment in the particular case, such judgment is subject to collateral attack, even though the court had jurisdiction of the parties and of the subject matter.' *People ex rel. v. Burke*, 72 Colo. 486, 212 Pac. 837. So where the court by its decree attempted to adjudicate the ownership of the water, it was held that, 'In so far as this decree purports to settle and fix relative rights of individual users and consumers of water through said ditch, it is ineffectual.' *Rollins v. Fearnley*, 45 Colo. 319, 101 Pac. 345. And, to the extent a decree is beyond the authority of the court, it cannot be made valid by any rule of res judicata or any statutes of limitation. It is no more effectual after four years, than before."

It well may be that the same principle should be applied

to appropriations made by the United States which have not been included in previous adjudications to which the United States was not a party.

## VII.
### JURISDICTION OVER THE WATER CLAIMS OF THE UNITED STATES

We now return to the proposition asserted earlier that the United States can obtain in a supplementary water adjudication in Colorado an adequate judicial determination of its rights and relative priorities. For the purpose of our holding in this respect we make the following three assumptions *arguendo:* (1) The United States has reserved water rights in Water District 37 initiated prior to more recent general adjudication decrees in that district; (2) The United States has acquired rights to the use of water under Colorado law and such rights were initiated prior to the decrees just mentioned; and (3) The United States is entitled to a decree that its rights to the use of water are the same as if each of those rights had been awarded priorities in a water adjudication next following the initiation of the right. We repeat — these are assumptions *arguendo* — not determinations.

Water rights in Colorado are of the greatest importance to the welfare and economy of the people of this state, and of considerable importance to the United States. There are about 2,700.000 acres of land under irrigation in Colorado. Of the 66½ million acres of land in Colorado, the United States has 36.4% — or about 24⅓ million acres — in the form of public domain, national forests, national parks and monuments, military reservations and an Indian reservation.

We have a situation in which the federal sovereign claims water rights which are nowhere formally listed, which are not the subject of any decree or permit and which, therefore, are etheric in large part to the person who has reason to know and evaluate the extent of his priorities to the use of water. To have these federal

rights in a state of uncorrelated mystery is frustrating and completely contrary to orderly procedure — and this is equally true from the standpoint of the United States as well as Colorado and its citizenry. The fact that our statutes do not provide for the adjudication of the rights of the United States with priorities prior to the dates of later decrees does not mean that our district courts in a water adjudication cannot determine the rights of the United States in relation to decreed water rights. On the contrary, our district courts have that jurisdiction. "The district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate and criminal cases, except as otherwise provided herein * * *." Colo. Const. art. VI, § 9(1). We hold that the constitution, without the need of any statute, grants jurisdiction of the subject matter under consideration.

The following remarks of Professor Karl N. Llewellyn are apt in this situation:

"But a court must strive to make sense *as a whole* out of our law *as a whole*. It must, to use Frank's figure, take the music of any statute as written by the legislature; it must take the text of the play as written by the legislature. But there are many ways to play that music, to play that play, and a court's duty is to play it well, and in harmony with the other music of the legal system." Llewellyn "Remarks on the Theory of Appellate Decision" etc., 3 Vanderbilt L. Rev. 395.

Moreover, there are statutes which appear to recognize this jurisdiction which we hold is plenary:

"For the purpose of hearing, adjudicating and settling all questions concerning the priority of appropriation of water between owners and claimants of water rights drawing water from the same source within the same water district, and all other questions of law and questions of right growing out of, or in any way involved or connected therewith, jurisdiction is hereby vested ex-

clusively in the district court of the county in which said water district exists * * *." C.R.S. 1963, 148-9-2.

"It is hereby declared to be the policy of the state of Colorado that all waters originating in or flowing into this state, whether found on the surface or underground, have always been and are hereby declared to be the property of the public, dedicated to the use of the people of the state, subject to appropriation and use in accordance with law. As incident thereto, it shall be the policy of this state to integrate the appropriation, use and administration of underground water tributary to a stream with the use of surface water, in such a way as to maximize the beneficial use of all of the waters of this state." C.R.S. 1963, 148-21-2(1) being the Water Right Determination and Administration Act of 1969.

 For the reasons already expressed as to the promotion of orderly procedure, we hold that it was the purpose and intent of the McCarran Amendment that it be used to obtain jurisdiction over the United States with respect to its reserved water rights. Of particular significance was the letter of the Acting Assistant Secretary of the Interior to the Chairman of the Committee on the Judiciary as to the McCarran Amendment under date of August 3, 1951. This is made a part of the Committee's Report mentioned earlier. Senate Calendar No. 711, *supra*. A portion of the letter reads:

"The interests of the United States in the use of the waters of its river systems are so many and so varied that a full enumeration of them could not be made without a great deal of careful study. It is enough, I hope, for present purposes to exemplify these interests by pointing to those which it has under the commerce clauses of the Constitution; those which exist by virtue of the creation of Indian reservations under the doctrine of *United States v. Winters* (207 U.S. 564 (1908) or by virtue of the creation of, for instance, a national park; those which it has asserted by entering into international treaties; those which it may have by virtue of its present and prior

ownership of the public domain and which have not vested under the acts of July 26, 1866 (14 Stat. 253, 43 U.S.C. 661), July 9, 1870 (16 Stat. 218, 43 U.S.C. 661), and March 3, 1877 (19 Stat. 377, 43 U.S.C. 321); those with respect to which its officers and employees have followed the procedure prescribed in section 8 of the act of June 17, 1902 (32 Stat. 388, 43 U.S.C. 383); and those which it has acquired by purchase, gift, or condemnation from private owners. Since the United States can be said, with varying degrees of accuracy, to be the 'owner' of rights of any or all these types, it is clear to me that enactment of the bill could lead to a tremendous volume of unwarranted litigation and, in the absence of a complete and detailed catalogue of all the rights and interests which the United States has in the stream systems of the Nation, to the hazard that, by overlooking some, it would be forever precluded from asserting them thereafter."

See also the discussions in 19 Stan. L. Rev. 65, *et seq.*; 20 Stan. L. Rev. 1187, *et seq.* and the Study submitted to the Public Land Law Commission, pp. 189-195, mentioned above. We are holding here that whatever rights the United States has to water can be recognized and adjudicated by our district courts just as adequately as in any other forum — and perhaps more adequately. Therefore, it would seem that no adequate reason exists to withhold reserved rights from the light of day and adjudication.

## VIII.

### *NOTICE*

In its appearance before the district court the City and County of Denver moved for an order providing for the notification of all appropriators in Water District 37 in order that the priorities of the United States' claims to water might be adjudicated. It filed a brief supporting its belief that the court can do this under the portion of C.R.S. 1963, 148-9-7 which reads, "if the proceeding be supplemental as to one class of rights, for example, irrigation, and original as to another class, for example nonirrigation, the service shall be necessary on

those whose rights have already been adjudicated." The claims of the United States, says Denver, is another class of rights under that statute. The United States and most of the other parties here disagree. As we hold that the district court has jurisdiction by reason of its plenary powers, it follows that the court need not have a statutory provision for notice. After the United States has filed its statements of claim in the district court, including the priority dates it seeks, the court then can determine which claimants of adjudicated rights need be given notice and can specify the manner that notice shall be given. Obviously, notice should be directed to those who might be adversely affected if the prayers for relief of the United States were granted.

Undoubtedly it would be preferable to have a statute setting forth the manner of notice in the circumstances under consideration, and it well may be that legislation in other respects might be helpful in implementing the jurisdiction of our courts over the United States. But although desirable, legislation is not necessary to implement the adjudication of rights under this opinion nor to protect the rights of all parties who may be involved, including the United States.

## IX

## WATER RIGHT DETERMINATION AND ADMINISTRATION ACT OF 1969

Senate Bill 81 adopted in 1969 (C.R.S. 1963, 148-21-1 et seq.) was approved after the briefs were filed in this proceeding and prior to oral argument. Following oral argument the United States and the City and County of Denver filed supplemental briefs on the subject of the effect of this Act upon the questions involved, if any. Since the district court did not have this matter before it, we deem it the better part of wisdom to await its determination with respect to this matter. We do make the observation that some or all of the parties in Water District 37, as well as in similar proceedings in other

parts of the state which have been held in abeyance awaiting this opinion, may conclude that the provisions of the 1969 Act are more suitable than the pre-existing statutes for adjudications involving the United States.

Rule discharged.