NAVAJO DEVELOPMENT CO., INC., a Colorado corporation, and Lelia Jane Collins, as Personal Representative of the Estate of Seaborn P. Collins, Deceased, Plaintiffs-Appellants,

v.

Lauren SANDERSON, Defendant-Appellee.

No. 28344.

Supreme Court of Colorado, En Banc.

Dec. 20, 1982.

---

Moses, Wittemyer, Harrison & Woodruff, P.C., Raphael J. Moses, Boulder, for plaintiffs-appellants.

Frank J. Anesi, Durango, for defendant-appellee.

ERICKSON, Justice.

This is an appeal from a summary judgment by the district court in an action for breach of warranty. Navajo Development Co. (Navajo) asserts that it is entitled to injunctive relief pending the outcome of various federal reserved water rights adjudications which may affect its title to water

rights and that the district court erred by reaching the merits of this case before the federal adjudications were completed. For the reasons set forth in this opinion, we affirm the issuance of a summary judgment.

## I.

On May 27, 1972, appellee, Lauren Sanderson, sold Navajo water rights for water from a tributary of Williams Creek in Hinsdale County, Colorado. The water rights entitled Navajo to divert 10 cubic feet per second (cfs.) of water with a priority date of September 9, 1937 (priority no. 310) and to convey the water via the Transmountain Williams Creek Squaw Pass Diversion Works from west of the Continental Divide to the Rio Grande River for use in Rio Grande County, east of the Continental Divide. Navajo planned to use the water for domestic purposes in various proposed real estate developments.

To pay for the water rights, Navajo executed a promissory note for $75,000 which was secured by certain land contracts placed in escrow and a real estate mortgage. The water rights were conveyed by warranty deed which included the usual covenants of title and also special covenants assuring that the water right had not been abandoned or diminished in any manner.

In November of 1972, the United States brought suit in federal district court to adjudicate its rights to water in various streams in Colorado, including streams tributary to Williams Creek. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The United States claimed sufficient quantities of water to carry out the purposes for which federal

reservations of land had been established and to provide for the present and future water needs of certain Indian tribes located on federal lands within Williams Creek's drainage basin. The United States claimed priority dates for these water rights beginning on March 2, 1868.

Navajo asserted that the federal claims would disrupt the water rights it had purchased and demanded, pursuant to section 38–30–122, C.R.S.1973 (1982 Repl.Vol. 16A),[1] that Sanderson defend the title to the water rights in the federal proceedings. Navajo's position was that Sanderson, as warrantor, had an obligation to defend title to the water rights against attack by persons alleging paramount title or risk being in breach of warranty. When Sanderson disclaimed any responsibility under the covenants of title, Navajo sought and was granted a preliminary injunction restraining Sanderson from foreclosing on the mortgage or proceeding on the promissory note until the federal proceedings were resolved. Navajo continued to make payments on the note into the registry of the district court. On March 29, 1976, the federal district court's dismissal of the federal claims was upheld by the United States Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Before Navajo's breach of warranty suit could go to trial, the United States refiled essentially the same claims in the District Court in and for Water Division No. 7. Navajo again demanded that Sanderson defend against title claims made in the federal suit. Sanderson refused to defend title, claiming that he was not liable for breach of covenant, and sought a summary judgment against Navajo. On September 19,

1. The section provides:
 "No right of action shall exist upon a covenant of warranty against a warrantor when possession of the premises warranted has been actually delivered to or taken by the warrantee, until the party menacing the possession of the grantee, his heirs, personal representatives, or assigns have commenced legal proceedings to obtain possession of the premises in question and the grantor, after notice, has refused to defend, at his own cost, the premises in such action."
 Section 38–30–122, C.R.S.1973 (1982 Repl.Vol. 16A).

1977, the district court granted the motion for summary judgment and Navajo appealed.

## II.

▮ The law of prior appropriation in Colorado is well-settled. The first person to divert unappropriated water and to apply it to a beneficial use has a water right superior to subsequent appropriators from the same water resource. *Colo.Const.* art. XVI, § 6; *Coffin v. Left Hand Ditch Co.,* 6 Colo. 443 (1882); *Yunker v. Nichols,* 1 Colo. 551 (1872). Once a water right has been adjudicated, section 37–92–306, C.R.S.1973, it is given a legally vested priority date which entitles the owner to a certain amount of water subject only to the rights of senior appropriators and the amount of water which is available for appropriation.

A validly adjudicated water right gives its holder a special type of property right. The value of the property right is that it allows a priority to the use of a certain amount of water at a place somewhere in the hierarchy of users who also have rights to water from a common source such as a lake or river. *See Nichols v. McIntosh,* 19 Colo. 22, 34 P. 278 (1893). There has been some confusion, however, over the nature of the property right to water.

Water rights have been characterized as a freehold, *Gutheil Park Inv. Co. v. Montclair,* 32 Colo. 420, 76 P. 1050 (1904); *Grand Valley Irrigation Co. v. Lesher,* 28 Colo. 273, 65 P. 44 (1901), *see also Comstock v. Olney Springs Drainage Dist.,* 97 Colo. 416, 50 P.2d 531 (1935); *Davis v. Randall,* 44 Colo. 488, 99 P. 322 (1908); *Monte Vista Canal Co. v. Centennial Irrigating Ditch Co.,* 22 Colo.App. 364, 123 P. 831 (1912); as an interest in real estate, *West End Irrigation*

*Co. v. Garvey,* 117 Colo. 109, 184 P.2d 476 (1947); *Talcott v. Mastin,* 20 Colo.App. 488, 79 P. 973 (1905); as a property right lacking the dignity of an estate in fee, *Knapp v. Colorado River Water Conservation Dist.,* 131 Colo. 42, 279 P.2d 420 (1955); as personal property, *Brighton Ditch Co. v. Englewood,* 124 Colo. 366, 237 P.2d 116 (1951); and, perhaps most accurately, as a "usufructuary" right, *Coffin v. Left Hand Ditch Co., supra; see also Wheeler v. Northern Colo. Irrigation Co.,* 10 Colo. 582, 17 P. 487 (1887); *Monte Vista Canal Co. v. Centennial Irrigating Ditch Co., supra.*

A usufructuary right gives its holder the right to use and enjoy the property of another without impairing its substance. G. Thompson, *The Modern Law of Real Property* § 1015 (J. Grimes ed. 1980). In other words, water may be applied beneficially by the holder of a water right without destroying the resource; the water molecules are not altered by the use of the water. Unused or waste water will be discharged back into the river system or otherwise recycled and therefore available for use by other appropriators. *See Wheeler v. Northern Colo. Irrigation Co., supra.*[2] The uncertain nature of the property right in water is evidence that its primary value is in its relative priority and the right to use the resource and not in the continuous tangible possession of the resource. *See* section 37–92–103(12), C.R.S.1973; *Nichols v. McIntosh, supra. Sterling Irrigation Co. v. Denver,* 19 Colo. 595, 36 P. 787 (1894).

▮ Whatever the exact nature of the property interest, water rights may be bought and sold without regard to the real property over which the water flows. *Sherwood Irrigation Co. v. Vandewark,* 138 Colo. 261, 331 P.2d 810 (1958); *Fort Lyon Canal*

---

**2.** We have characterized the usufructuary interest in water in this way:

"[A]fter appropriation the title to this water, save, perhaps, as to the limited quantity that may be actually flowing in the consumer's ditch or lateral, remains in the general public, while the paramount right to its use, unless forfeited, continues in the appropriator."

*Wheeler v. Northern Colo. Irrigation Co.,* 10 Colo. at 587, 17 P. at 489. The concept is analogous to an easement allowing a person to cross another's land: The property interest is not consumed in its use.

*Co. v. Rocky Ford Canal Co.,* 79 Colo. 511, 246 P. 781 (1926); *Seven Lakes Reservoir Co. v. New Loveland and Greeley Irrigation & Land Co.,* 40 Colo. 382, 93 P. 485 (1907); *Fuller v. Swan River Placer Mining Co.,* 12 Colo. 12, 19 P. 836 (1888). Thus, water can be conveyed and the quality of the title may be warranted much like with real property. *Ackerman v. Walsenburg,* 171 Colo. 304, 467 P.2d 267 (1970); *Eriksen v. Whitescarver,* 57 Colo. 409, 142 P. 413 (1914); *Seyfried v. Knoblauch,* 44 Colo. 86, 96 P. 993 (1908); *Bailey v. Murphy,* 19 Colo.App. 310, 74 P. 798 (1903). The conveyance of a water right requires that the same formalities be observed as in the conveyance of real estate. Section 38–30–102, C.R.S.1973 (1982 Repl.Vol. 16A). But as we have emphasized, to view a water right as a fixed, tangible amount of water is to misunderstand the doctrine of prior appropriation.

"Property rights in water consist not alone in the amount of the appropriation, but, also, in the *priority* of the appropriation. It often happens that the chief value of an appropriation consists in its *priority* over other appropriations from the same natural stream. Hence, to deprive a person of his priority is to deprive him of a most valuable property right.... A priority of right ot the use of water being property, is protected by our constitution so that no person can be deprived of it without 'due process of law.' Const.Colo., Art. 2, § 25."

*Nichols v. McIntosh,* 43 Colo. at 27, 34 P. at 280 (emphasis in original). Any warranties of title or other covenants attached to the conveyance of a water right must be in harmony with these underlying realities of the nature of a water right in Colorado.

### III.

Navajo argues that the water right which it purchased from Sanderson is impaired by the existence of federal reserved water rights. It claims that the impairment will potentially diminish the amount of water available for appropriation under water right no. 310 and place a senior appropriator ahead of Navajo on the ladder of priorities. Navajo also argues that it is entitled to injunctive relief to prevent the statute of limitations from running on its warranty claims against Sanderson.

According to Navajo, federal reserved rights are a special hazard to adjudicated and vested water rights. Federal reserved rights, it argues, exist outside and independent of the state appropriation scheme and therefore are a menace to validly conveyed water claims. *See supra* note 1. *See also Seyfried v. Knoblauch,* 44 Colo. 86, 96 P. 993 (1908). If the property right conveyed by Sanderson is menaced by the federal claims, Navajo alleges that a breach of covenants of title occurred when Sanderson failed to defend against the federal government's lawsuit. *See* section 38–30–122, C.R.S.1973. We disagree.

The warranty deed which Sanderson delivered to Navajo upon execution of the contract to convey water priority no. 310 contained the typical covenants. By statute, "in the conveyance of water rights ... the same formalities shall be observed and complied with as in the conveyance of real estate." Section 38–30–102, C.R.S.1973. *Bernklau v. Stevens,* 150 Colo. 187, 371 P.2d 765 (1962); *Means v. Pratt,* 138 Colo. 214, 331 P.2d 805 (1958); *Wanamaker Ditch Co. v. Crane,* 132 Colo. 366, 288 P.2d 339 (1955). Navajo's deed included covenants of seizin, freedom from encumbrances, and quiet enjoyment. *See generally* R. Powell, *The Law of Real Property* §§ 879–903 (1982). The deed also contained two special covenants designed for the conveyance of a water right. The special covenants provided that "the right to the use of [the amounts guaranteed by water right no. 310] has not been abandoned or diminished in any manner." The additional covenants protect Navajo from the hazards of abandonment or non-use which threaten every claim for an appropriation of a water right in Colorado. *See, e.g.,* section 37–92–402, C.R.S.1973 (1982 Cum.Supp.).

Navajo claims that federal reserved water rights will cause a breach of these various covenants of title. The nature of federal reserved rights, however, does not support such a claim.

The United States Supreme Court has held that Congress may expressly or impliedly reserve unappropriated water to fulfill the purposes for which federal land reservations are established. *United States v. New Mexico,* 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978); *Cappaert v. United States,* 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976); *Arizona v. California,* 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963); *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908). The amount of water reserved is the amount necessary to fulfill the original purposes for which Congress reserved the lands. *United States v. New Mexico, supra.* We held recently that federal reserved rights exist in Colorado and that the water courts have jurisdiction to adjudicate the relationship between federal, state, municipal, and private claims to water. *United States v. Denver,* Nos. 80SA99 & 80SA100 (Colorado Supreme Court Nov. 23, 1982). *See also Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1974); *United States v. District Court for Eagle County,* 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971); *United States v. District Court for Water Division No. 5,* 401 U.S. 527, 91 S.Ct. 1003, 28 L.Ed.2d 284 (1971); *United States v. District Court for Eagle County,* 169 Colo. 555, 458 P.2d 760 (1969).

 Federal reserved water rights, by their nature, exist from the time that the legislative or executive action created the federal enclave to which the water right attaches. *United States v. New Mexico, supra; Cappaert v. United States, supra.* If Congress or the President wish to obtain

more water for the federal lands after the initial reservations, they must use the state appropriation machinery or condemn the desired water. *United States v. New Mexico, supra.* Reserved waters, however, are not dependent on state appropriation law for their existence. Conceptually, federal reserved waters are withdrawn from unappropriated waters which exist at the time the federal enclaves were created. At that moment, the federal enclave has a priority to an amount of water necessary to fulfill the enclave's purpose;[3] the water right is not subject to defeat by subsequent appropriators. *Cappaert v. United States, supra.* The United States Supreme Court recognized, however, that federal reserved rights cause a gallon-for-gallon reduction of water available to appropriators on already over-appropriated streams and lakes. *United States v. New Mexico,* 438 U.S. at 702, 98 S.Ct. at 3015. For that reason, courts must precisely determine the exact federal purposes which require a water right and quantify no more water than is necessary to effectuate those purposes. *Id. See also United States v. Denver, supra.* Unfortunately, the United States has only recently sought to establish and quantify its water rights. That fact, however, does not destroy or diminish the federal government's reserved water rights.

 Federal reserved water rights must be understood as a doctrine which places a federal appropriator within the state appropriation scheme by operation of federal law. A junior appropriator cannot preempt or defeat the federal government's water claims; though it is now well established that the federal government must adjudicate its claims in state courts. *United States v. District Court Eagle County, supra; United States v. District Court for Water Division No. 5, supra.* The federal government must also submit its quantified

---

**3.** We are not called upon at this time to decide the exact date of the federal government's priority. We have not yet been presented with the question whether federal priority dates are determined under Colorado's system of adjudication. *See* section 37–92–306, C.R.S.1973; Comment, *Determining Priority of Federal Reserved Rights,* 48 U.Colo.L.Rev. 547 (1977).

water rights for administration by state officials. *United States v. Denver, supra.*

Navajo's argument, therefore, that the federal reserved water rights impair its priority by potentially diminishing the amount of water available under the conveyed water rights causing a breach of the covenants of seizin and freedom from encumbrances is erroneous. *Bernklau v. Stevens, supra; Fisk v. Cathcart,* 3 Colo.App. 374, 33 P. 1004 (1893). Navajo's priority is not affected at all. Federal reserved rights neither defeat Navajo's title to water rights nor breach the covenants of quiet enjoyment and warranty of seizin. *Bernklau v. Stevens, supra;* R. Powell, *The Law of Real Property, supra.*

Any amount of water which the federal government obtains by virtue of its reserved rights will affect all junior appropriators. *United States v. New Mexico, supra.* The water rights which Navajo purchased may be junior to some of the federal claims, though it may also have a superior and senior right to other federal claims.[4] Water right no. 310, however, does not give its holder any permanent claim on the federal reserved waters which were not being diverted by the United States at the time of the conveyance. The federal waters were usable by private and other public appropriators only until the United States decided to quantify and utilize its rights. The federal government's position is similar to the holder of a conditional senior water right who can step ahead of junior appropriators causing a diminution of the amount of water available for diversion. *See* section 37–92–301, C.R.S.1973; *Conley v. Dyer,* 43 Colo. 22, 95 P. 304 (1908).

The covenants which Navajo obtained do not guarantee that senior appropriators will not step in and take a proportionally larger amount of water from a stream or lake; nor do the covenants guarantee that the federal government will not assert its dormant claims. The covenants only guarantee that water right no. 310 is a vested priority of use not subject to defeat by persons seeking the same priority. No one can covenant that the amount of water available under a water right will maintain the same flow year in and year out and will not be diminished. In the arid West, a dry year can affect the amount available to every appropriator. A covenant of title does not extend the amount of water which is available for appropriation. A grantor cannot warrant that it will snow or rain, or that all senior appropriators will not withdraw their share of water. The value of a water right is its priority and the expectations which that right provides. *Nichols v. McIntosh, supra; People v. Higgins,* 67 Colo. 441, 184 P. 365 (1919). Water law must protect those economic and social expectations and the stability and orderliness which accompany them. The law, however, can never guarantee that there will be enough water to satisfy all claims to this scarce resource.[5]

We therefore conclude that Sanderson conveyed to Navajo valid water rights and that no breaches of covenants of title are caused by the existence or quantification of federal reserved water rights. Navajo contracted to purchase a specific water right and obtained all that its holder could convey. Sanderson did not warrant that preexisting federal claims would have

---

4. The federal government claims different priorities and amounts of water depending on the type of federal enclave. For example, Indian reservations are established for different purposes than national parks and monuments and will therefore have different water needs. At this time, however, we cannot say what effect federal reserved rights will have on the amount of water which Navajo may divert in any given year.

5. We are not unmindful of the severe impact a contrary holding would have on every Colorado water right not subject to the statute of limitations. Navajo's position would mean that every contract which conveyed a water right by a warranty deed with the usual covenants would be breached when the federal government filed its claims for reserved water rights. *See Combs v. Farmers Highline Canal and Reservoir Co.,* 38 Colo. 420, 88 P. 396 (1906).

no effect on water right no. 310 and was under no obligation to defend against the federal government's lawsuits on penalty of breach of contract. Sanderson has met all of his obligations under the warranty deed by conveying a relative priority which is fixed as to priority at position number 310. *Nichols v. McIntosh, supra.*

Because of our disposition, it is not necessary to address the claims for equitable relief which have been appealed. We therefore find that the district court correctly granted Sanderson's motion for summary judgment.

Accordingly, we affirm the district court's issuance of summary judgment for the defendant, Lauren Sanderson.

LOHR, J., does not participate.

